Raymond J. Tittmann No. 191298
Christina M. Roberto No. 317139
Patrick M. Laurence No. 228272
Isaac Walrath No. 317767
**TITTMANN WEIX LLP**
350 S. Grand Ave., Suite 1630
Los Angeles, California 90071
Phone: (213) 797-0630
rtittmann@tittmannweix.com
croberto@tittmannweix.com
plaurence@tittmannweix.com
iwalrath@tittmannweix.com

Attorneys for Plaintiff and Counter-Defendant
VOYAGER INDEMNITY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| VOYAGER INDEMNITY INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>        v.<br><br>ZALMAN N. INC., an incorporated business entity in California and ZALMAN T. NEMTZOV, an individual,<br><br>    Defendants. | Case No. 2:22-cv-03010-PA-MAR<br><br>**REPLY OF VOYAGER INDEMNITY INSURANCE COMPANY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION**<br><br>**Hearing:**<br>Date:         April 10, 2023<br>Time:         1:30 pm<br>Courtroom:  9A, 9th Floor<br>Judicial Officer:  Hon. Percy Anderson |

# TABLE OF AUTHORITIES

**Cases**

Abu-Lughod v. Calis, No. CV 13-2792 DMG (RZX), 2015 WL 12745842, at *2 (C.D. Cal. Apr. 6, 2015) ................................................................................ 11

Cambridge Electronics Corp. v. MGA Electronics, Inc., 227 F.R.D. 313, 334 (C.D. Cal. 2004) ................................................................................................. 4, 5

DK Holdings v. Miva, Inc., No. 16-CV-0580 W (AGS), 2019 WL 1470881, at *3 (S.D. Cal. Apr. 3, 2019) ...................................................................................... 8

Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 827 (9th Cir. 2011) ............................................................................................................................ 5

Hargis v. Foster, 312 F.3d 404, 409 (9th Cir. 2002) ............................................................ 11

Hoffman v. Construction Profession Services, Inc., 541 F.3d 1175 (9th Cir. 2008) ............................................................................................................................ 6

IP Global Investments America, Inc. v. IP Body Glove Holdings, Inc. 2019 WL 121191, at *4 (C.D. Cal. Jan. 7, 2019) ................................................................. 11

La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest, 624 F.3d 1083, 1088 (9th Cir. 2010) ............................................................................... 8

Medina v. Multaler, Inc., 547 F. Supp. 2d 1099, 1106 n.8 (C.D. Cal. 2007) ........................ 5

Miksis v. Howard, 106 F.3d 754, 760 (7th Cir.1997) ........................................................... 3

Pickern v Pier Imports (U.S.), Inc., 457 F.3d 963 ............................................................. 8, 9

Sanchez v. Rodriguez, 298 F.R.D. 460, 463 (C.D. Cal. 2014) ..................................... 5, 6, 7

Silong v. United States, No. CV F 06-0474 LJO DLB, 2007 WL 2712100, *3 (E.D. Cal. Sept. 14, 2007) ........................................................................................... 3

Sold 21, Inc. v. Hublot of America, 2014 WL 12558007 (C.D. Cal. Sept. 29, 2014) ............................................................................................................................ 5

Volterra Semiconductor Corp. v. Primarion, Inc., 796 F.Supp.2d 1025, 1042-43 (N.D. Cal. 2011) ....................................................................................................... 3

Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006) ............................................................................................................................ 8

Wong v. Regents of the University of California, 410 F.3d 1052 (9th Cir. 2005) ............................................................................................................................ 3

Yeti by Molly, Ltd. V. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001) .................................................................................................................... 3, 4, 8

**Statutes**

Fed R. Civ. Proc. 41(c) ........................................................................................................ 11

| | | |
|---|---|---|
| 1 | Fed. R. Civ. P. 37(c)(1) ................................................................................................ | 3 |
| 2 | Fed. R. Civ. P. 41(a)(2), (c) ........................................................................................ | 11 |
| 3 | Fed. R. Civ. Proc. 26(a)(1)(C) .................................................................................... | 2 |
| 4 | Fed. R. Civ. Proc. 26(e) .............................................................................................. | 4 |
| 5 | Fed. R. Civ. Proc. 37(c) ........................................................................................... | 3, 5 |

## I. INTRODUCTION

More than four years after a serious personal injury which gave rise to multiple lawsuits—including the underlying state court action filed back in 2020—Zalman T. Nemztov has now produced, for the very first time, a document which purports to be a Subcontract Agreement between him and MBR Construction, Inc. Despite years of ongoing litigation, and despite having been asked to search for and produce this document at deposition on three separate occasions, and despite having never produced the document either in the underlying action or in this case, Mr. Nemtzov simply attaches the purported Subcontract Agreement to his declaration without any explanation whatsoever as to why the document is now being provided here for the very first time.

Although the purported contract is plagued by what can be best described as "irregularities", for purposes of this Motion the Court need only observe that the purported Subcontract Agreement: (1) is **not** alleged anywhere in Zalman's Answer and Counterclaim; (2) was **not** disclosed in Zalman's Rule 26 initial disclosures **because Zalman never served any disclosures**; (3) was **not** produced in response to Voyager's requests for production despite Zalman's statement under oath that **all "contracts" and "agreements"** in his possession, custody, and control **had been produced**; and (4) was **not** identified in Zalman's verified interrogatory responses despite being asked specifically to identify **all facts and documents** which support Zalman's contention that he is an additional insured. In view of these egregious non-disclosures, it is clear that the purported Subcontract Agreement must be excluded under the "automatic", "mandatory", and "self-executing" sanction set forth in Rule 37 of the Federal Rules of Civil Procedure.

Setting aside the undisclosed and unproduced Subcontract Agreement, the issue which Zalman has actually alleged in his pleadings—**namely, that the Certificate of Liability Insurance allegedly makes Zalman an additional insured**—does not raise a genuine issue of material fact for trial. Zalman has submitted no evidence to rebut the undisputed fact that the Certificate was not issued by either Voyager or its agent, Amwins, nor was it ever approved by either of them. Zalman has also submitted no evidence to rebut

the undisputed fact that Certificate was issued by MRB's insurance broker, Wood Guttmann, which had no authority to act on Voyager's behalf.

Finally, Zalman has not met—nor has he attempted to meet—his burden of production in opposing summary judgment on Zalman's Counterclaim or on his claim for punitive damages. Instead, Zalman has filed a voluntarily dismissal of that Counterclaim without prejudice. However, because Voyager has already served a responsive pleading to the Counterclaim, Zalman's request must be construed as a motion for voluntary dismissal which should be granted with prejudice. Alternatively, summary judgment should be entered on the Counterclaim because Zalman has not met his burden in opposing summary judgment on the Counterclaim.

For these reasons and those explained in greater detail below, Voyager respectfully requests that the Court grant this Motion in its entirety. If, however, the Motion is not granted, Voyager will seek leave to amend its pleadings, to amend this Court's scheduling order, and to re-open discovery based on the production of a purported Subcontract Agreement which has never been identified or produced until now.

## II.   LEGAL DISCUSSION

### A.   All Evidence of the Previously Undisclosed and Unproduced Contract Must Be Excluded Based on Zalman's Failure to Make *Any* Disclosures and Failure to Identify the Contract in His Verified Discovery Responses.

Under Rule 26(a), Zalman was required to disclose, among other things, "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses". Such disclosure was required to be made "at or within 14 days after the parties' Rule 26(f) conference." Fed. R. Civ. Proc. 26(a)(1)(C). Here, the parties' Rule 26(f) conference took place on September 23, 2022. Declaration of Patrick M. Laurence ISO Reply ("Laurence Decl.") ¶ 4. Zalman, however, never made *any* disclosures in this case. Laurence Decl., ¶ 4. In particular, Zalman never provided a copy of the purported contract or a description of the contract which he has only

produced now, for the very first time, in opposition to Voyager's Motion.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial[.]" Fed. R. Civ. Proc. 37(c). "This sanction is ***"automatic and mandatory"*** unless the party can show the violation was "either justified or harmless." Miksis v. Howard, 106 F.3d 754, 760 (7th Cir.1997) (emphasis added). The Ninth Circuit has described this evidentiary exclusion as a ***"self-executing," "automatic" sanction*** to "provide[ ] a strong inducement for disclosure of material...." Yeti by Molly, Ltd. V. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001) (quoting Fed. R. Civ. P. 37 advisory committee's note) (emphasis added). Exclusion is required "***even when a litigant's entire cause of action or defense has been precluded***." Id. at 1106 (emphasis added). "This ***automatic sanction*** provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, ***or on a motion, such as one under Rule 56***." Fed. R. Civ. P. 37(c)(1) advisory committee's note (1993) (emphasis added). The Ninth Circuit has expressly upheld a district court's exclusion of evidence submitted in opposition to a motion for summary judgment where the party did not comply with the requirements of Rule 26. Wong v. Regents of the University of California, 410 F.3d 1052 (9th Cir. 2005). Furthermore, numerous courts have excluded evidence for failure to comply with Rule 26 and entered summary judgment based on an absence of admissible evidence raising a triable issue of fact. See, e.g., Volterra Semiconductor Corp. v. Primarion, Inc., 796 F.Supp.2d 1025, 1042-43 (N.D. Cal. 2011) (sustaining an objection to evidence proffered by defendants where defendants did not disclose the evidence in their contentions); Silong v. United States, No. CV F 06-0474 LJO DLB, 2007 WL 2712100, *3 (E.D. Cal. Sept. 14, 2007) ("Summary judgment may be imposed based on absence of evidence excluded for failure to comply with Rule 26(a)").

Furthermore, Zalman has never produced the contract in either this case or in the underlying action and has never identified the contract in any of his discovery responses in this case. Laurence Decl., ¶ 3. Zalman was specifically asked to identify which documents

support his claim that he is an additional insured under the Voyager policy. Laurence Decl., ¶ 5, Ex. 12, p. 3. Zalman responded under oath that the only documents which support his claim are the Certificate of Liability Insurance and the Voyager policy; ***nothing else***. Laurence Decl., ¶ 5, Ex. 12, p. 3. Further, Zalman was specifically asked to the produce all "contracts" and "agreements" between Zalman and MRB Construction, Inc. which support his claim that he is an additional insured. Laurence Decl., ¶ 6, Ex. 13, p. 2. Zalman responded under oath, "**Responding Party attaches hereto <u>all DOCUMENTS in Responding Party's possession, custody and control</u> in response to this Request for Production**". Laurence Decl., ¶ 6, Ex. 13, p. 2. The Subcontract Agreement was ***not included***. Id. Accordingly, Zalman's failure to produce or even identify the Subcontract Agreement in his verified discovery responses provides a separate basis for excluding the purported contract under Rule 37. See Cambridge Electronics Corp. v. MGA Electronics, Inc., 227 F.R.D. 313, 334 (C.D. Cal. 2004) (granting summary judgment after refusing to consider evidence that was not disclosed or supplemented in interrogatory responses); see also Fed. R. Civ. Proc. 26(e).

### B. Zalman Has Not Established—and Cannot Establish—That His Failure to Provide Disclosures or Responsive Discovery Was Substantially Justified or Harmless.

While exclusions of evidence are reviewed for an abuse of discretion, the Ninth Circuit "give[s] ***particularly wide latitude*** to the district court's discretion to issue sanctions under Rule 37(c)(1)." Yeti, at 1106 (emphasis added). The burden of proving that the failure to provide initial disclosures is substantially justified or harmless is on the party facing evidentiary exclusions. Id. at 1107. No such evidence has been submitted by Zalman in his Opposition, and no further response by Zalman is permitted. See L.R. 7-10. Nonetheless, while the burden rested squarely on Zalman to justify his failure to provide any disclosures as well as his failure to identify and produce the Subcontract Agreement in his verified discovery responses, Voyager notes that Zalman cannot possibly meet his burden here.

*First*, the failure to provide initial disclosures cannot be substantially justified. In the

parties' joint Rule 26 report signed by all counsel, it was agreed by Zalman that initial disclosures would be provided 14 days after the Rule 26 conference. (Dckt. No. 23). No such disclosures were ever provided here. Laurence Decl., ¶ 4. A party's mere failure or error in failing to provide disclosures does not constitute substantial justification. Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 827 (9th Cir. 2011).

*Second*, the failure was not harmless. As noted in the moving papers, Zalman's Answer and Counterclaim are premised on the allegation that he is an additional insured based on the Certificate of Liability Insurance attached to his Answer. *See* Dckt. No. 19, ¶26 ("the Certificate of Liability Insurance dated March 6, 2019 named … **Defendants as Additional Insured**.") By contrast, Zalman did not allege the existence of any purported written construction subcontract between MRB and Zalman, much less attach that document to his Answer. (Id.) Furthermore, Zalman has never produced the purported contract in either this case or in the underlying action and has never identified the contract in any of his discovery responses. Laurence Decl., ¶¶3, 5-6. Producing undisclosed information "at the time of summary judgment places the opposing party at a disadvantage and constitutes unfair surprise" and is thus not harmless. Sold 21, Inc. v. Hublot of America, 2014 WL 12558007 (C.D. Cal. Sept. 29, 2014); see also Cambridge, 227 F.R.D. at 324; Medina v. Multaler, Inc., 547 F. Supp. 2d 1099, 1106 n.8 (C.D. Cal. 2007). Furthermore, in the event this Motion is not granted in its entirety, Voyager will seek leave to amend its pleadings and to re-open discovery, at considerable time and expense to Voyager, on account of Zalman's failure to provide disclosures and responsive discovery.

*Third*, excluding the purported contract under Rule 37(c) does not amount to a "dismissal" requiring any evidence of willfulness, bad faith, or fault. C.f. Sanchez v. Rodriguez, 298 F.R.D. 460, 463 (C.D. Cal. 2014). For one thing, Zalman already asked this Court to voluntarily dismiss his claims for affirmative relief. (Dckt. No. 35). For another thing, excluding the purported contract is not tantamount to a dismissal because, as noted above, Zalman's Answer and Counterclaim, as well as his verified discovery responses, are all premised on the allegation that he is an additional insured based on the Certificate of

Liability Insurance. Thus, excluding the purported contract is not equivalent to a dismissal of Zalman's entire case. In Hoffman v. Construction Profession Services, Inc., 541 F.3d 1175 (9th Cir. 2008), the Ninth Circuit rejected the plaintiffs' assertion that the district court was required to make a finding of willfulness or bad faith to exclude all evidence of plaintiffs' damages. Although a blanket exclusion of all damages effectively doomed plaintiffs' employment causes of action, the Ninth Circuit explained that "the portion of Rule 37 relied on by the district court has been described as a *self-executing, automatic sanction to provide a strong inducement for disclosure of material*. *The implementation of the sanction is appropriate even when a litigants entire cause of action will be precluded*. Because the district court acted within its discretion when it precluded presentation of undisclosed evidence of damages, we affirm the ruling of the district court." Id. at 1180 (internal quotations, citations, alterations omitted) (emphasis added). Similarly, excluding evidence of the purported contract here is appropriate even if it will make Zalman's case more difficult to defend based on the Certificate of Liability Insurance alone.

*Finally*, even if a showing of willfulness, bad faith, or fault is needed to exclude the purported contract for failing to make disclosures, such evidence is present here. "[W]illfulness, bad faith, or fault does not require wrongful intent; rather, disobedient conduct not shown to be outside the party's control *is by itself sufficient* to establish willfulness, bad faith, or fault." Sanchez, 298 F.R.D. at 463 (emphasis added). In this regard, Zalman conspicuously fails to provide *any* explanation in his declaration as to how or why the purported contract suddenly appeared now after years of not producing it in either this case or in the underlying personal injury action. *See* Dckt. 36-3. Zalman was deposed three separate times in the underlying action and, each time, failed to produce any written contract at his deposition despite being asked specifically to do so. And notably, the purported contract which Zalman has submitted here for the first time is plagued by irregularities:

(1) it purports to describe a binding legal agreement by MRB to provide **$90,000 in both labor and materials** (including "lumber", "hardware", "plywood sheathing", and "shear paneling"), Dckt. 36-3, #1128, even though the undisputed evidence here shows that

MRB actually provided *no materials* and *less than $15,000 in labor*. Dckt. 36-3,##130-1139. In other words, the actual course of construction corroborates Marvin Ramos' testimony that MRB provided labor only on a "time and material" basis but is entirely inconsistent with the terms of Zalman's purported contract;

 (2) the contract expressly references and incorporates *multiple significant exhibits which are mysteriously missing* from Zalman's declaration, including an "Exhibit B Payment Schedule", an "Exhibit B-1 Billing Instructions", and an "Exhibit B-2 Sample Pay Schedule." *See* Dckt. 36-3, #1110. The omission of such exhibits is decidedly convenient for Zalman, since they would have shown how and when the $90,000 in labor and material would supposedly be paid, in direct contradiction to how MRB was actually paid on the Project—namely, at random intervals, with no materials provided, and for labor only totaling less than $15,000. Dckt. 36-3,##130-1139;

 (3) the contract pages are numbered sequentially such that the signature page (page 16) is followed immediately by Exhibit D relating to insurance (page 17) even though all the intervening exhibits are missing. Dckt. 36-3, ##1123-1124. There is no explanation either in the contract or in Zalman's declaration for the missing exhibits. The page numbering also appears to be in a different size and font than those used in the contract.

 Ultimately, however, no evidence of bad faith or wrongful intent is needed to exclude the undisclosed evidence presented here for the very first time. This is because Zalman cannot possibly establish that the failure to provide initial disclosures was "outside his control" to avoid a finding of willfulness. <u>Sanchez</u>, 298 F.R.D. at 463. Zalman agreed to provide the disclosures in the parties' Joint Rule 26 report filed with this Court. (Dckt No. 23). If Zalman was unable to provide disclosures at that time, then Zalman would have informed Voyager's counsel and this Court. Zalman did not do so. (Id.) Furthermore, Zalman cannot possibly establish that the failure to at least identify the Subcontract Agreement in his verified discovery responses was somehow "outside his control". Accordingly, the Court can and should exercise its "particularly wide latitude" under Rule 37 to exclude the undisclosed and unidentified Subcontract Agreement even if a showing

of willfulness is required. Yeti, at 1106.

### C. Zalman Failed to Provide Notice of the Written Construction Contract in His Answer and Counterclaim and Therefore the Purported Contract Must Be Disallowed on that Basis as Well.

Relatedly, all evidence of the written contract must be disallowed because it was not alleged in Zalman's Answer and Counterclaim. "[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings." Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006). "If a plaintiff fails to assert any factual allegations as to a particular theory of liability in a complaint, the 'provision of affidavits and declarations supporting [that theory] at the summary judgment stage is ineffectual.'" DK Holdings v. Miva, Inc., No. 16-CV-0580 W (AGS), 2019 WL 1470881, at *3 (S.D. Cal. Apr. 3, 2019) (quoting La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest, 624 F.3d 1083, 1088 (9th Cir. 2010)). This is because Rule 8(a)(2) "requires that the allegations in the complaint give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Pickern v Pier Imports (U.S.), Inc., 457 F.3d 963, 968 (internal quotation marks omitted).

In Pickern, the plaintiff, a visually-impaired and mobility-impaired woman, attempted to oppose summary judgment by filing a written report detailing alleged accessibility violations on the defendants' property. The district court disallowed the report because it detailed allegations that "were not contained in the complaint" and were "raised before the court for the first time following the [defendants'] motion for summary judgment." Id. at 966. On appeal, the Ninth Circuit affirmed the district court's decision to disallow the report even though a copy had been previously provided to the defendants as part of settlement negotiations. Id. at 969. The Court concluded that, even though the defendants had previously received a copy of the report, "the complaint gave [defendants] no notice of the specific factual allegations presented for the first time in [plaintiff's] opposition to summary judgment." (Id.)

Similarly, Zalman's Answer and Counterclaim are premised on the allegation that he

is an additional insured **by virtue of the Certificate of Liability Insurance.** *See* Dckt. No. 19, ¶26 ("the Certificate of Liability Insurance dated March 6, 2019 named … **Defendants as Additional Insured**.") Zalman did not allege the existence of any purported written construction contract between MRB and Zalman, much less attach that document to his Answer. (Id.) Furthermore, unlike the plaintiff in Pickern, Zalman never previously provided a copy of the purported contract either to Voyager or Voyager's counsel, and has not alleged the existence of the contract anywhere in his verified discovery responses. Accordingly, the contract must be disallowed on the separate basis that Zalman's pleadings fail to provide any notice of a written construction agreement between Zalman and MRB.

### D. The Undisclosed Contract Does Not Evidence Any Written Agreement to Make Defendant Zalman N., Inc. An Additional Insured.

Importantly, the purported contract does not evidence any agreement to make the corporate entity, Defendant Zalman N., Inc., an additional insured. Accordingly, at a minimum, partial summary judgment must be entered against Defendant Zalman N., Inc.

### E. Zalman's Contentions Regarding the Certificate of Liability Insurance Are Non-Sensical and Create No Genuine Issue of Material Fact.

With regard to the claim which Zalman has actually placed in issue in his pleadings—namely, that the Certificate of Liability Insurance allegedly makes Zalman an additional insured—Zalman has submitted no evidence to rebut the undisputed fact that the Certificate was not issued by either Voyager or its agent, Amwins, nor was it ever approved by them. (SUF Nos. 25-27). Zalman has also submitted no evidence to rebut the undisputed fact that Certificate was issued by MRB's insurance broker Wood Guttmann, which had no authority to act on Voyager's behalf. (Id.) Instead, Zalman make a number of arguments which are either non-sensical, entirely unsupported by the evidence, or both.

First, Zalman argues that Voyager's contention that the March 6, 2019 Certificate of Liability Insurance cannot apply retroactively to the date of Mr. Hernandez's injury on February 21, 2019 "belies the facts." (Opp. 10:16.) In this regard, Zalman claims under oath that the injury occurred on March 21, 2019, Dckt. 36-3, ¶ 23, even though his lawyer

admits that the injury took place on February 21, 2019. Dckt. 36-2, 11:1. In any event, Zalman provides no foundation for his statement and Mr. Hernandez' civil complaint and sworn testimony both confirm that he was injured on February 21, 2019. (SUF No. 20). As such, Zalman is clearly attempting to have the Certificate apply *retroactively* to the date of loss.

Second, Zalman argues that Voyager failed to inform Zalman that he was not an additional insured after receiving the Certificate. (Opp. 10:1-2). Tellingly, Zalman claims that Voyager received the Certificate from MRB's insurance broker but does not cite to or submit any evidence to that effect because there is none. (Opp. 6:23-24). Moreover, Zalman fails to explain how any of this makes him an additional insured under the terms and conditions of the Voyager policy.

Finally, Zalman detects some apparent inconsistency in Voyager's defense of MRB and Mr. Ramos in the underlying action, arguing that if no coverage exists due to the absence of an agreement between MRB and Zalman, then MRB and Mr. Ramos should have been dismissed from the underlying lawsuit. (Opp. 9:12-26). Candidly, this argument makes no sense. To the extent that Zalman is suggesting that a written contract between Zalman and MRB is needed in order for Voyager to defend MRB, then such an argument plainly misunderstands the fact that MRB is the "named insured" in the Voyager policy (as explained in the moving papers) and is not being defended as an "additional insured" under the additional insured blanket endorsement.

### F. Zalman's Counterclaim Should Be Dismissed with Prejudice, or Alternatively, Summary Judgment Should Be Entered.

Voyager also brought this Motion to have summary judgment or, alternatively, summary adjudication entered in favor of Voyager on Zalman's Counterclaim. (Dckt. No. 31). On March 15, 2023, Zalman filed a Notice of Dismissal of his Counterclaim pursuant to Rule 41 of the Federal Rules of Civil Procedure. (Dckt. No. 35). As a result, Zalman contends that Voyager's Motion on the Counterclaim is "moot". (Dckt. No. 36). Voyager, however, filed and served an Answer to the Counterclaim on September 6, 2022. (Dckt. No.

21). As such, the Notice of Dismissal is ineffective because Voyager's responsive pleading has already been served. See Fed R. Civ. Proc. 41(c) (stating that a voluntary dismissal of a counterclaim "must be made (1) before a responsive pleading is served; or (2) if there is no responsive pleading, before evidence is introduced at a hearing or trial"). Accordingly, the Notice of Dismissal should be construed as a motion for voluntary dismissal ***with prejudice***. See IP Global Investments America, Inc. v. IP Body Glove Holdings, Inc. 2019 WL 121191, at *4 (C.D. Cal. Jan. 7, 2019) (dismissing counterclaim ***with prejudice*** after defendant attempted to file a voluntarily dismissal rather than oppose plaintiff's motion for summary judgment); see also Abu-Lughod v. Calis, No. CV 13-2792 DMG (RZX), 2015 WL 12745842, at *2 (C.D. Cal. Apr. 6, 2015) ("The Court may in its sound discretion elect to dismiss claims with or without prejudice once a plaintiff has expressed a desire to voluntarily dismiss them").

After a responsive pleading has been served, a claimant may seek voluntary dismissal "only by a court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2), (c). The voluntary dismissal of a counterclaim with prejudice is appropriate where a party seeks to voluntarily dismiss the counterclaim rather than oppose a motion for summary judgment. Hargis v. Foster, 312 F.3d 404, 409 (9th Cir. 2002) (affirming dismissal ***with prejudice*** where plaintiff moved to voluntarily dismiss claims under Rule 41(a)(2) at the summary judgment stage); Abu-Lughod, 2019 WL 121191, at *2 (dismissing ***with prejudice*** where party elected to voluntarily dismiss claims in lieu of opposing motion for summary judgment).

Here, dismissal of the Counterclaim should be entered with prejudice because Zalman had ample opportunity to conduct discovery to bolster his counterclaim for "bad faith" yet conducted ***absolutely no discovery in this case***. Laurence Decl., ¶ 7. As noted in the moving papers, Zalman never presented any written contract to Voyager in support of his claim as an additional insured and therefore it was objectively reasonable for Voyager to deny his claim. (SUF Nos. 18-19). Lacking any evidence of bad faith, Zalman has now attempted to voluntarily dismiss his counterclaim rather than oppose Voyager's motion for

summary judgment. But "[Zalman] should not be permitted to evade summary judgment on unmeritorious claims by voluntarily dismissing the claims and later reinstating them." <u>Abu-Lughod</u>, 2019 WL 121191, at *2. Accordingly, Voyager requests that Zalman's request for voluntary dismissal be granted with prejudice.

Alternatively, the Court should grant summary judgment on the Counterclaim because Zalman has not met—nor has he attempted to meet—his burden of production in opposing summary judgment on the Counterclaim or on his claim for punitive damages. Zalman has not, for example, offered any argument or evidence to refute the fact that Zalman's bad faith claim is barred by the "genuine dispute" doctrine or that he lacks "clear and convincing" evidence to support his claim for punitive damages claim. (See Motion, Dckt. 31-1, pp. 19-23). As such, summary judgment should be entered on the Counterclaim to the extent that the Counterclaim is not dismissed with prejudice.

## III. CONCLUSION

Zalman has made the Certificate of Liability Insurance the centerpiece of his case in his operative pleadings and in his verified discovery responses, and has never served any disclosures identifying the Subcontract Agreement which he has only now submitted, for the very first time, in opposition to this Motion. Given these egregious non-disclosures, the Court is well within its "wide latitude" to exclude the purported contract under the "automatic", "mandatory", and "self-executing" sanction set forth in Rule 37. Further, it is evident that the Certificate of Liability Insurance creates no genuine issue of material fact for trial. For all the foregoing reasons, Voyager's respectfully requests that the Court grant this Motion in its entirety.

Dated: March 27, 2023

TITTMANN WEIX LLP

By: _____
Patrick M. Laurence

Attorneys for Plaintiff and Counter-Defendant
VOYAGER INDEMNITY INSURANCE COMPANY

# CERTIFICATE OF SERVICE
*Voyager v. Zalman N. Inc., et al.*
USDC of Central of California – Western Division
Case No. 2:22-cv-03010-PA-MAR

I am an employee in the Los Angeles County, State of California. I am over the age of 18 years and not a party to the within action. My business address is 350 S. Grand Ave., Suite 1630 Los Angeles, CA 90071. On March 27, 2023, I served the foregoing document entitled:

**REPLY OF VOYAGER INDEMNITY INSURANCE COMPANY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION**

on the person or persons listed below, through their respective attorneys of record in this action, by placing true copies thereof in sealed envelopes or packages addressed as shown below by the following means of service:

| | |
|---|---|
| Paul D. Bojic, Esq.<br>45110 Club Drive, Suite E<br>Indian Wells, CA 92210<br>realestateattorney1@msn.com<br><br>Tel: (760) 340-3700<br>Fax: (760) 340-3724<br><br>Attorney for Defendant and Counterclaimant ZALMAN N. INC. and ZALMAN T. NEMTZOV | |

☐ BY MAIL: By placing the original and/or a true and correct copy enclosed in a sealed envelope with postage fully prepaid, in the U.S. mail at Los Angeles, California. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon, fully prepaid at Los Angeles, California, in the ordinary course of business.

☒ By e-mailing the document(s) to the persons at the e-mail address(es) above. This is necessitated during the declared National Emergency due to the Coronavirus (COVID-19) pandemic because this office will be working remotely. No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

☐ BY OVERNIGHT MAIL: I caused a copy of said document(s) to be placed in an overnight mail depository for next day delivery.

☒ STATE - I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.

Executed on March 27, 2023 at Huntington Beach, California.

/s/ *Kelly O'Brien*

Kelly O'Brien